**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| LAMONT THOMPSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:11CV01335 AGF |
| ) | |
| DAVE DORMIRE, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Missouri state prisoner Lamont Thompson for a writ of habeas corpus pursuant to 28 U.S.C. ' 2254. Petitioner was convicted by a jury of first-degree robbery and armed criminal action, and was sentenced to 15 years and 5 years, respectively, to run concurrently. The crimes arose out of a robbery committed by Petitioner and another individual, during which the other individual displayed a deadly weapon.

For habeas relief, Petitioner claims that his constitutional rights were violated in the following ways: (1) the state appellate court improperly found on plain error review that an error in the verdict director for first-degree robbery was harmless; (2) the verdict director in question, which did not follow the Missouri approved instruction for accomplice liability, did not require the jury to find an essential element of the crime beyond a reasonable doubt; (3) Petitioner's right to a speedy trial was violated; and (4) trial counsel provided ineffective assistance by failing to object to the above-noted verdict director, failing to request a mistrial and/or judgment of acquittal when the trial court instructed the jury to

continue deliberating after the jury submitted a note indicating it was unable to reach a unanimous decision, failing to call Petitioner or any other witness to testify on his behalf, and failing to request a dismissal based upon the denial of a speedy trial. For the reasons set forth below, federal habeas relief shall be denied.

## BACKGROUND

Petitioner was arrested on February 22, 2006. On March 21, 2006, an indictment was filed against Petitioner charging him with the crimes of conviction. The first count alleged that Petitioner committed the robbery with another individual, and that the other participant in the crime displayed what appeared to be a deadly weapon. (Resp. Ex. A at 16.)[1]

The case was set for an initial appearance on February 23, 2006, but was continued twice by Petitioner until April 4, 2006, when Petitioner was arraigned. On April 4, 2006, a public defender entered an appearance on Petitioner's behalf, and on May 3, 2006, a substitute public defender entered an appearance for Petitioner. After the case was

---

[1] Under Missouri law, "A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime . . . (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument. Mo. Rev. Stat. § 569.020.1

> The elements for robbery in the first degree are that a person: (1) appropriated the property of the victim, (2) with the purpose to deprive the victim thereof, (3) without the victim's consent, or by means of deceit or coercion, (4) used or threatened the use of immediate physical force, and (5) used or threatened the use of immediate physical force for the purpose of preventing or overcoming resistance to taking of the property, or to the retention thereof immediately after the taking.

*State v. Wright*, 383 S.W.3d 1, 6 n.3 (Mo. Ct. App. 2012).

transferred to a different judge, the court rescheduled the initial appearance for May 9, 2006, then continued the case "for want of time by the court" to September 19, 2006. *Id*. at 3-4. On July 25, 2006, Petitioner filed a pro se request for a speedy trial. The record does not indicate how the trial court addressed this speedy trial request. On September 19, 2006, a jury trial was set for January 8, 2007.

On the January 8, 2007 trial date, Petitioner and the state requested a joint continuance, which was granted until April 16, 2007. One month later, a retained attorney entered an appearance on Petitioner's behalf. Petitioner's trial was not held on April 16, 2007; instead, the court continued the case "at the request of the court" to August 27, 2007. On August 27, 2007, the court continued the trial at Petitioner's request to October 29, 2007, then again at the court's request to February 11, 2008. *Id*. at 6-7, 96. On October 3, 2007, Petitioner filed a pro se motion to dismiss for violation of a speedy trial, and on November 6, 2007, Petitioner's counsel filed a request for a speedy trial. Both motions were summarily denied. Petitioner's jury trial commenced on February 11, 2008, almost 24 months after Petitioner's indictment. It is not disputed that approximately 14.5 months of the delay were not occasioned by Petitioner.

Petitioner did not testify at trial nor present any evidence. The evidence presented at trial, viewed in the light most favorable to the verdict, established the following:

The victim knew Petitioner through a mutual friend, Kenny Millen, who owned a car shop. On October 12, 2005, Petitioner called the victim and asked him for a ride. When the victim arrived to pick him up, Petitioner entered the front passenger seat of the victim's car and closed the door. Suddenly, a man opened the passenger door and pointed

a shotgun at the victim, ordered him out of the car, and told him to put his jewelry and money on the ground in front of him. The victim complied, leaving some money in his pockets. When the victim was getting out of the car, Petitioner reached over, took the keys from the victim's car, walked behind the car, and approached the victim. Petitioner took the rest of the victim's money out of his pockets, telling the man with the shotgun, "That's all he's got." Petitioner and the other man ran away with the victim's jewelry, money, car keys, and cell phone. (Trial Tr., Resp. Ex. I. at 50-61.)

The victim contacted a friend who gave him a ride to a nearby residence, where the victim told Millen what had just happened. Millen called Petitioner and confronted him about the robbery. Petitioner initially denied participating in the robbery, but eventually admitted to robbing the victim and said that he could return to the victim what he stole from him, but that he could not return the property that the other person took. Petitioner never returned any of the victim's property. Approximately one month after the robbery, Petitioner called Millen from Arkansas and apologized for what he did, but said he wasn't coming back. *Id*. at 61-62, 97-105.

Instruction No. 5, the verdict director for first-degree robbery, stated that the jury should find Petitioner guilty of first-degree robbery if it found and believed from the evidence beyond a reasonable doubt:

> First, that on or about October 13, 2005, in the City of St. Louis, State of Missouri, [Petitioner] took money and jewelry which was property owned by [the victim], and
>
> Second, that [Petitioner] did so for the purpose of withholding it from the owner permanently, and

> Third, that [Petitioner], or another, in doing so threatened the immediate use of physical force on or against [the victim], forcing [the victim] to deliver up the property, and
>
> Fourth, that in the course of taking the property, another person displayed or threatened the use of what appeared to be a deadly weapon, and
>
> Fifth, that the other person referred to in paragraph Fourth was a participant with [Petitioner] in the commission of the offense.

(Resp. Ex. A at 111.)[2] This instruction was modeled on MAI-CR 3d 323.02, the verdict director for first-degree robbery. Petitioner's counsel did not object to any of the jury instructions.

The jury began to deliberate at 12:45 p.m. on February 13, 2008. After the jury retired to deliberate, the trial court asked Petitioner whether it was his own decision not to testify. The trial court ascertained that Petitioner was both aware that he had the right to testify, and that he had made the decision himself not to do so. (Resp. Ex. I at 137-38.)

At 3:00 p.m., the jury sent a note to the court inquiring, "Are the witness statements solely what we have to base our decision on or can we make a decision on what we may perceive as a lack of evidence presented by the state?" The court instructed the jury in writing, "The jury should be guided by the instructions and the evidence." At 3:30 p.m., the jury sent another note to the court asking, "It seems that we are surely unable to come to unanimous vote. What should we do?" The court responded with another written note, "Please continue to deliberate." (Resp. Ex. A at 128.) Petitioner's counsel did not object

---

[2] The record indicates that this instruction was submitted by the state. (Resp. Ex. A at 121.)

5

to either written note. After 35 additional minutes of deliberation, the jury returned with a guilty verdict on both counts.

**Direct Appeal**

Petitioner raised two arguments on direct appeal: (1) that the trial court plainly erred in giving the verdict director for first-degree robbery, and (2) that Petitioner's right to a speedy trial was violated. With respect to the challenged instruction, Petitioner contended that it excused the state from its burden of proof on a contested element of first-degree robbery – the physical force element – because it allowed the jury to convict Petitioner if another threatened the immediate use of physical force. Petitioner urged that the evidence failed to establish beyond serious dispute whether Petitioner ever had the purpose to threaten the use of physical force against the victim. Petitioner pointed out that Notes on Use 2 to MAI-CR 3d 323.02 provides, "[i]f someone other than the defendant committed some or all of the acts described in paragraphs First, Second, and Third, then this should not be used, but rather an instruction based on MAI-CR 3d 304.04 [accomplice liability] should be given."[3] (Resp. Ex. B at 13-19.)

---

3 The verdict director under MAI-CR 3d 304.04 would have read as follows:

> A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.
>
> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about October 13, 2005, in the City of St. Louis, State of

With respect to the alleged speedy trial violation, Petitioner argued that he had to wait over 14 months (not counting continuances requested by the defense) for his case to be tried; he timely asserted his right to a speedy trial; and he was prejudiced by the delay because he was incarcerated from his February 22, 2006 arrest until his trial on February 11, 2008. Petitioner specifically stated that he was not asserting that his defense had been impaired, or that witnesses had disappeared or otherwise become unavailable due to the delay. (Resp. Ex. B at 20-26.)

The Missouri Court of Appeals rejected both claims and affirmed the convictions. In reviewing the challenged instruction for plain error (as Petitioner's trial counsel did not object to the instruction), the appellate court noted that MAI-CR 3d 304.04, the instruction for accomplice liability, should indeed have been used. However, the court held that the improper instruction did not affect the jury's verdict (the standard for plain error review) or mislead the jury because the instruction given was "altered by the parties to cover accomplice liability." The court noted that the words "another person" were added to paragraph four of the instruction, and that the fifth paragraph required the jury to find that

---

> Missouri, [setting out the elements of first-degree robbery, ascribing the third element to the person with whom Defendant acted],
>
> then you are instructed that the offense of first-degree robbery has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
>
> Second, that with the purpose of promoting or furthering the commission of that first-degree robbery, the defendant acted together with or aided another person in committing the offense,
>
> then you will find the defendant guilty under Count I of first-degree robbery.

the other person was a participant with Petitioner in the commission of the robbery. (Resp. Ex. D at 3.)

In determining that Petitioner was not denied his right to a speedy trial, the appellate court balanced the four factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972): (1) length of the delay; (2) reason for the delay; (3) Petitioner's assertion of his right to a speedy trial; and (4) prejudice to Petitioner. The court found that the total delay of nearly 24 months between the arrest and trial weighed in Petitioner's favor. The reasons for the delay were "at best a split, if not a factor in favor of the state" because the delay attributable to Petitioner's requests for continuance were weighted heavily against him, whereas the delays caused by the court reassigning the case to different judges and the court's own motions for continuance weighed less heavily against the state. The court noted that Petitioner asserted his right to a speedy trial in a timely manner with his pro se motion, but this factor was "attenuated by the fact that Petitioner later showed he was not prepared for trial" by changing attorneys for a third time after filing that motion. Finally, the court emphasized that prejudice to Petitioner, the most important factor, weighed heavily in favor of the state because Petitioner was "unable to cite any impairment to his defense" as a result of the delay. *Id*. at 3-6.

**State Post-Conviction Proceedings**

On appeal from the denial of state post-conviction relief, Petitioner only raised two of the claims that he is now pursuing for federal habeas relief: (1) trial counsel was ineffective for failing to object and/or request a mistrial when the trial court instructed the jury to continue deliberating after the jury submitted a note indicating it was unable to

reach a unanimous decision; and (2) trial counsel was ineffective for failing to call Petitioner to testify in his own defense after Petitioner indicated a desire to do so. The motion court held an evidentiary hearing at which Petitioner and his trial counsel testified.

With respect to the first claim, Petitioner's trial counsel testified that he did not object when the court instructed the jury to continue deliberating because he believed that Petitioner had a "decent case," and he hoped that the jury might acquit Petitioner if it continued to deliberate. Petitioner's trial counsel also asserted that he did not believe the trial court would have granted a mistrial because the jury had not been deliberating very long. (Resp. Ex. J at 8, 12-13). With respect to the second claim, Petitioner's trial counsel testified that he prepared Petitioner to testify at trial and "begged" him to do so, but Petitioner refused. Petitioner's trial counsel suspected that Petitioner decided not to testify because he was threatened by a male spectator's presence in the courtroom.

Petitioner testified that his trial counsel did not prepare him to testify, and that he informed his trial counsel he wanted to testify in his own defense. Petitioner stated that he was not threatened by the individual's presence in the courtroom. Instead, Petitioner did not testify because he "was afraid, and plus [counsel] never called [him] to testify." Petitioner further testified that he told the trial court it was his decision not to testify because he was "angry and knew it was too late to testify since the jury was already deliberating." *Id*. at 9-11, 20-21, 24.

In reviewing the motion court's findings for clear error, the appellate court found that trial counsel's explanation of his decision not to object and/or request a mistrial when the trial court instructed the jury to continue deliberating constituted "reasonable trial

9

strategy." (Resp. Ex. H at 9.) The appellate court noted that Petitioner's trial counsel "believed that further deliberation may have resulted in a result favorable to Petitioner," and that such an objection would have failed because the trial court's instruction "[did] not constitute a deadline nor . . . convey a sense of pressure virtually directing the jury to reach a verdict." *Id*. at 10.

The appellate court determined that trial counsel did not prevent Petitioner from testifying, deferring to the motion court's finding that "there [was] no credible evidence that trial counsel refused to let [Petitioner] testify at trial. Instead, there was credible testimony that trial counsel encouraged [Petitioner] to testify." (Resp. Ex. E at 122-23.) Furthermore, the appellate court noted that Petitioner affirmatively told the trial court that he knew he had the right to testify, and made his own decision not to testify.

**Federal Habeas Petition**

In his petition for a writ of habeas corpus, Petitioner raises the four grounds set forth above. Respondent argues that federal habeas relief must be denied with respect to the claims related to the first-degree robbery verdict director because they were procedurally defaulted in state court, or, in the alternative, the state appellate court's decision was reasonable. Respondent argues that habeas relief must be denied with respect to Petitioner's ineffective assistance of counsel claims based on failing to object to the alleged improper verdict director, failing to call any witnesses to testify (apart from Petitioner), and failing to request a dismissal based upon the denial of a speedy trial, because they were not raised in state court and are thus procedurally defaulted. Respondent contends that the


state courts' adjudication of the remaining claims was legally and factually reasonable, precluding federal habeas relief on those claims.

## DISCUSSION

**Procedural Default**

"Ordinarily, a federal court reviewing a state conviction in a [federal habeas corpus] proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (citation omitted). For Missouri prisoners, claims that could have been but were not raised on appeal from the denial of a post-conviction motion are procedurally defaulted. *Moore-El v. Luebbers*, 446 F.3d 890, 897-98 (8th Cir. 2006).

A state prisoner, however, may obtain federal review of a defaulted claim by showing cause for the default and actual prejudice as a result of the constitutional violation, or that he is actually innocent of the crimes for which he was convicted. *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default. *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). But ineffective assistance of counsel in not raising a claim on appeal from the denial of post-conviction relief does not constitute cause. *Id.* at 1317.

The Court agrees with the state that Petitioner's claims of ineffective assistance of trial counsel, with the exception of those claims related to the judge directing the jury to continue deliberating and Petitioner's right to testify, were procedurally defaulted in state

11

court. Petitioner has not shown a basis to excuse the default, and so federal habeas relief is denied with respect to the defaulted claims.

While noting a split of authority in the Eighth Circuit about whether a state appellate court's plain error review of a claim "cures" a procedural default, in several cases the Eighth Circuit applied the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") standard of review, as set forth below, to consideration of the claims that had been considered by the state courts under plain error review only. *See, e.g., Shelton v. Purkett*, 563 F.3d 404, 408 (8th Cir. 2009); *Toua Hong Chang v. Minnesota*, 521 F.3d 828, 832 (8th Cir. 2008). This Court shall do the same here with respect to Petitioner's claim that the verdict director for first-degree robbery violated his due process rights. *See Watkins v. Wallace*, No. 4:12 CV 1268 RWS, 2014 WL 3361769, at *5 (E.D. Mo. July 9, 2014). The Court believes this is especially appropriate here where the state appellate court did not summarily reject the claim.

**Standard of Review**

Where a claim has been adjudicated on the merits in state court, AEDPA provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Strong v. Roper*, 737 F.3d 506, 510 (8th Cir. 2013); *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

"A determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and the petitioner has the burden of "rebutting this presumption of correctness by clear and convincing evidence." *Grass v. Reitz*, 749 F.3d 738, 743 (8th Cir. 2014). A state court's credibility findings are owed this same deference. *Id*. at 744.

**Instructional Error**

The Supreme Court has held that the fact that an instruction deviates from a state's standard instructions is not a basis for habeas relief; rather, instructional error only rises to the level of a constitutional issue where the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). To satisfy due process, a verdict director must require the state to prove beyond a reasonable doubt the elements of the crime with which a defendant is charged. To prevail on a claim of instructional error in a verdict director, a petitioner must show both that a verdict director

13

was ambiguous and that there was "a reasonable likelihood" that the jury applied the instruction in a way that relieved the state of its burden of proving every element of the crime beyond a reasonable doubt. *Waddington*, 555 U.S. at 190-91 (citing *Estelle*, 502 U.S. at 72). In making this determination, the challenged instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id*. at 191.

Although the matter gives this Court pause, the Court finds reasonable the conclusion reached by the Missouri Court of Appeals that the verdict director for first-degree robbery did not mislead the jury or affect its verdict with respect to that crime. Under Missouri law of accomplice liability, "[a] person is criminally responsible for the conduct of another when . . . [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Mo. Rev. Stat. § 562.041.1(2). The Court notes that the verdict director for armed criminal action was properly modeled on MAI-CR 3d 304.04, and thus, the jury was told in general terms in the introductory paragraph to that instruction, that

> A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

(Resp. Ex. A at 113.)

Based on the evidence adduced at trial, state law, and the entire charge to the jury, the Court finds that there is no reasonable likelihood that the jury applied the instructions in

14

a way that violated the Constitution or which resulted in Petitioner's conviction for first-degree robbery that violated his right to due process. *See Hawkins v. Roper*, No. 4:04CV1269 SNL (TIA), 2007 WL 2332280, at *10-11 (E.D. Mo. Aug. 2007) (finding that state appellate court's adjudication of habeas petitioner's instructional error claim was not unreasonable because error in not following the state's pattern instruction's Notes on Use did not so mislead the jury as to deprive the petitioner of due process).

**Speedy Trial**

"The Sixth Amendment guarantees a criminal defendant the right to a speedy trial." *United States v. Brown*, 325 F.3d 1032, 1034 (8th Cir. 2003) (citation omitted). In order to determine whether the right to a speedy trial has been violated, courts balance four factors: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of the right; and (4) prejudice. *Barker*, 407 U.S. at 530; *see also Vermont v. Brillon*, 556 U.S. 81, 88-89 (2009) (affirming the *Barker* test and holding that delays caused by state public defenders appointed to represent a defendant were not attributable to the state)*; United States v. Rodriguez-Valencia*, 753 F.3d 801, 805 (8th Cir. 2014).

The Supreme Court explained in *Barker* that none of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. . . . [C]ourts must still engage in a difficult and sensitive balancing process." *Barker*, 407 U.S. at 533. "Because the *Barker* standard is a general, multi-factor standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Taylor v. Roper*, 561 F.3d 859, 863 (8th Cir. 2009) (citation omitted).

15

The Supreme Court has identified three separate ways that post-charge delay may prejudice a defendant: "oppressive pretrial incarceration," anxiety and concern about the accused's fate, and impairment of the accused's defense. *Doggett v. United States*, 505 U.S. 647, 654 (1992).

Here, although the total delay that was not occasioned by Petitioner was quite substantial (approximately 14.5 months), the Court cannot say that the state court's adjudication of Petitioner's speedy trial the claim was factually or legally unreasonable. The state court applied the correct legal principle and engaged in an appropriate balancing of the relevant factors. This is so especially in light of the fact that Petitioner specifically did not claim any prejudice to his defense due to the delay. *See Herrod v. Steele*, No. 4:11-CV-01491, 2013 WL 1363757, at *4-5 (E.D. Mo. April 4, 2013) (holding that state court was not unreasonable in applying *Barker* to conclude that a 12-month delay caused by the state was not a speedy trial violation where petitioner failed to show prejudice by making only generalized claims that the delay caused anxiety and rendered him unable to work); *Smith v. Roper*, No. 4:09 CV 1227 HEA/DDN, 2011 WL 8169081, at *5-6 (E.D. Mo. Dec. 12, 2011) (same with regard to 17-month delay caused by the state where the petitioner did not show impairment to his defense). This ground for relief thus fails.

**Assistance of Counsel**

To prevail on a claim on ineffective assistance of counsel, a habeas petitioner must not only show that counsel's performance was deficient, but must also show that he was prejudiced by his counsel's incompetence. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the prejudice prong, a petitioner must show "a reasonable probability

16

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Kennedy v. Kemna*, 666 F.3d 472, 477 (8th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Here the Court concludes that the state appellate court did not unreasonably find that defense counsel did not prevent Petitioner from testifying. It is true that a criminal defendant has the "ultimate authority to make certain fundamental decisions regarding the case, [including] whether to . . . testify in his or her own behalf." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Here, the post-conviction court was faced with conflicting testimony of what transpired between defense counsel and Petitioner and the court chose to believe defense counsel's version. Issues of credibility are left to the discretion of the state courts, and nothing in the record suggests that the state court erred in its determination on this matter. *See Winfield v. Roper*, 460 F.3d 1026, 1035 (8th Cir. 2006) (rejecting a habeas petitioner's claim that counsel prevented him from testifying, where state court held an evidentiary hearing on the issue and believed counsel's testimony over that of the petitioner); *Washington v. Kemna*, 16 F. App'x 528, 530-31 (8th Cir. 2001) (same).

Moreover, here, the reasonableness of the state court's adjudication of this issue is supported by the exchange noted above between the trial court and Petitioner, ascertaining that Petitioner knew he had a right to testify and waived that right.

The Court also defers to the state court's adjudication of the claim that defense counsel was ineffective in failing to object to the direction given by the court to the jury to "[p]lease continue to deliberate" after the jury indicated it was unable to come to

unanimous vote. In *Allen v. United States*, 164 U.S. 492 (1896), the Supreme Court approved the use of a non-coercive instruction by a judge to encourage a deadlocked jury to reach a unanimous verdict. *Allen*, 164 U.S. at 501-02. In *Allen*, the Court upheld a charge to the jury in which the court directed the minority jurors to reconsider their views in light of their disagreement with the majority. The charge given by the trial court in the present case to please continue to deliberate was "singularly non-coercive," *see Wiggins v. Boyette*, 635 F.3d 116, 127 (4th Cir. 2011), and the state court reasonably determined that defense counsel's failure to object to this charge did not constitute ineffective assistance of counsel. *See, e.g., Mitchell v. Wenerowhicz*, No. 1:CV–11–1169, 2014 WL 2565667, at *9 (M.D. Pa. June 6, 2014).

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court=s assessment of Petitioner=s claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. ' 2254(d)(2). *See Miller-El v. Cockrell*, 123 S.Ct. 1029, 1040 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED t**hat the petition of Lamont Thompson for a writ of habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of July, 2014.